[No. 9798.  Department One.— September 25, 1885.]

MEHITABLE W. LOWDEN, APPELLANT, v. FRED-
ERICK FREY ET AL., RESPONDENTS.

WATER RIGHTS— JUDGMENT— NEW TRIAL— EVIDENCE— FINDINGS. — The matters
    in issue related to the rights of the respective parties to the waters of a certain
    stream.  The judgment determining such rights and an order refusing a new
    trial affirmed on the evidence and findings of the court.

APPEAL from a judgment of Trinity County, and from an
order refusing a new trial.

The facts are stated in the opinion.

*W. J. Tinnin,* and *Burch & Lowenberg*, for Appellant.

*C. E. Williams, J. W. Philbrook,* and *Hatch & Chadbourne*,
for Respondents.

SEARLS, C. — This is an action to fix and determine by a
decree of court conflicting rights of plaintiff and defendants to
the water of Grass Valley Creek and its tributaries, to enjoin
defendants from interference with the water adjudged to belong
to the plaintiff, and to recover damages.

Plaintiff's grantors in 1850 located what is now known as
the Lowden Ranch, situated in Trinity County, and through
which a stream known as Grass Valley Creek flows.   The ranch
was situated upon public lands of the United States.

In 1852 a ditch was constructed from the creek, and the
waters thereof diverted and conducted through said ditch to the
ranch, and there used for purposes of irrigation.

In 1854, defendant Frederick Frey and others constructed a
ditch from Grass Valley Creek at a point above that of plaint-
iff, and extending to Ohio Flat and other points on Trinity
River, for mining purposes.   This last ditch is known as the
Ohio Flat Ditch.

The main issue at the trial was as to the extent of plaintiff's
prior right to the water of said creek.   Plaintiff had a decree
adjudging her prior right to the use of 120 inches of water
measured under a four-inch pressure, from which decree and
from an order denying a motion for a new trial she appeals.

The contention of appellant is that she was entitled to a decree establishing her right to a much larger quantity of water than that adjudged her by the court, and that she was entitled to damages for past diversion of water by defendants. The prior right of plaintiff to forty inches of water is admitted by the pleadings.

At the trial it was stipulated in open court, by counsel for the respective parties, that "the evidence be confined to the issue upon the quantity of water appropriated by, and to which each of the respective parties is entitled, and to the question of damages, and that all other issues, if any, raised by the pleadings be ignored."

The testimony as to the extent of plaintiff's prior right to the water, involved as substantial and radical a conflict as can well be imagined. It ranged, according to the statements of different witnesses, from thirty-six inches to sixteen hundred inches.

A certain ditch known as the Skinner Ditch, and having a large capacity, is described by some of the witnesses. and its very existence ignored by others.

This marked conflict may be accounted for in part by the fact that the witnesses were detailing from memory facts and circumstances occurring thirty years prior to the time at which they were called upon to testify.

Again, the tendency of all water ditches is to increase in size and capacity by age. The constant erosion of their banks by the current of the water flowing through them, tends in some degree to their enlargement . The fact that debris, deposited from this source, and in many instances brought from other sources and deposited in such ditches, is necessarily removed in cleaning them, and is usually deposited upon the lower bank of the ditch, thus imperceptibly increasing its carrying capacity. All these circumstances are or may well be overlooked by honest witnesses, who only remember that in their observation a given ditch has never at any time been specially enlarged, and when coupled with the fact that the increase in size is so gradual as not to attract particular attention, goes far toward explaining the very great discrepency usually observed among witnesses, when testifying as to the capacity of ditches of long standing.

With this substantial conflict of testimony, and involving, as it does, so many elements of uncertainty, we are not at liberty to disturb the findings of the court below, by which the conclusion was reached, that plaintiff had a prior right to but 120 inches of water.

It is objected by plaintiff that there is a conflict between the seventh and eighth findings of the court, and that the latter is in direct conflict with the testimony.

The seventh finding is to the effect that defendants threaten, and will continue to divert the water from said Grass Valley Creek in derogation of plaintiff's right to 120 inches of the first flow thereof, etc.

The eighth finding is that plaintiff has sustained no damage by reason of the acts of the defendants.

The court had previously found in its sixth finding that the defendants had always permitted 120 inches of water to flow to plaintiff's ditch when the creek afforded that quantity, except from July 14 to August 14, 1883, when they permitted but forty inches so to flow.

The testimony of Bates, a witness for plaintiff, shows that during this same month, from July 14 to August 14, 1883, 123 to 125 inches of water actually flowed in the ditch of plaintiff, which was a larger quantity than the court finds it was entitled to receive, for which reason, as we suppose, it was found plaintiff was not damaged.

The apparent discrepancy in the finding that defendants only permitted forty inches of water to flow during the month indicated, while plaintiff was, in fact, using a much larger quantity, is explained by the testimony of defendant Frey and others, from which it appears that while defendants denied the right of plaintiff to over forty inches of water, they in practice allowed a larger quantity to flow, when they were not using it themselves, and that plaintiff was in the habit of *taking it*, without reference to the claim of defendants.

In other words, the defendants denied plaintiff's right to any quantity of water exceeding forty inches, and sought to deprive her of all above that quantity, hence the sixth and seventh findings. They did not succeed in depriving her of the water, as they sought to do, and she was not damaged, hence the eighth finding.

The findings are not as clear and explicit as they might have been, but we cannot see that injustice has been done the plaintiff.

The decree in plaintiff's favor entitled her to costs of the action; therefore the question of her right to nominal damages was of no practical importance in the case. (*Chambers* v. *Frazier*, 29 Ohio St. 362.)

The testimony tends to show that the appropriation of the water by defendants and their grantors was for mining purposes generally, to be used at various points. Under such circumstances, the position of plaintiff that "the right to the use of water for mining purposes ceases with the exhaustion of the mine for which it was appropriated" has no application.

We find nothing in the errors of law assigned to warrant a reversal of the judgment or order denying a new trial, and are of opinion they should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion the judgment and order are affirmed.